## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LUANN GILLESPIE SHULTZ**, ) <br> as Administratrix of the Estate of Amy L. ) <br> Gillespie, Deceased, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **ALLEGHENY COUNTY**; ) <br> **ALLEGHENY CORRECTIONAL** ) <br> **HEALTH SERVICES, INC.**; ) <br> **RAMON C. RUSTIN**; **DANA PHILLIPS**; ) <br> **JOHN AND JANE DOES NUMBERS** ) <br> **1 THROUGH 5**, individuals employed as ) <br> medical staff at the Allegheny County Jail ) <br> whose identities cannot presently be ) <br> determined; and **JOHN AND JANE** ) <br> **DOES NUMBERS 6 THROUGH 10**, ) <br> individuals employed as Corrections ) <br> Officers and Supervisors at the ) <br> Allegheny County Jail whose identities ) <br> cannot presently be determined, ) <br> ) <br> Defendants. ) | 2:10cv1530 <br> **Electronic Filing** |

### MEMORANDUM OPINION

Luann Gillespie Shultz ("plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 seeking redress for the alleged deprivation of her deceased daughter's constitutional rights. Compl. at ¶¶ 1, 6. Plaintiff is the court-appointed administratrix of decedent Amy Gillespie's ("Gillespie") estate. Id. at ¶ 6. She brings this suit pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. C. S. § 8301, and the Survival Act, 42 Pa. C. S. § 8302, against the following defendants: Allegheny County ("the County"), Allegheny Correctional Health Services Inc. ("ACHS"), Ramon C. Rustin ("Rustin"), Dana Phillips ("Phillips"), John and Jane Does

Numbers 1 through 5 as medical staff at ACJ, and John and Jane Does Numbers 6 through 10 as Corrections Officers and Supervisors at ACJ.

Gillespie, a 27 year-old woman, was incarcerated at the Allegheny County Jail ("ACJ"). Id. at ¶ 13.  Defendants allegedly violated Gillespie's rights by ignoring her serious medical problems, refusing to provide her with appropriate, necessary medical treatment, and demonstrating a deliberate indifference to her serious medical needs.  Id. at ¶ 45.  These actions and inactions ultimately led to Gillespie's death.  Id.  ACHS and its senior policy makers, Rustin and Phillips, are directly responsible for this violation.  Id. at ¶ 50.

Presently before the court is Allegheny County and Rustin's ("the moving defendants") motion to dismiss.  They contend that the complaint fails to state a claim because it does not identify any policy or custom that resulted in a violation of a constitutional right.  Rustin also asserts a lack of personal involvement and invokes qualified immunity.  For the reasons set forth below, the motion will be denied.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery.  Id. at 544.  In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by

presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are merely consistent with a defendant's liability. Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)).

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("The complaint must state

3

'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

1983

Gillespie was incarcerated at the ACJ due to a violation of her work release.  The violation was that she was pregnant.  When admitted to the ACJ, Gillespie was approximately twelve to fourteen weeks pregnant  Compl. at ¶ 15.  Upon admission on December 2, 2009, Gillespie received an initial physical and mental health screening which showed her to be in good health.  Id. at ¶ 16.

Gillespie spoke to plaintiff and Roger Mullarkey, a close friend, "on several occasions before December 22, 2009, stating that she had complained of being ill to Defendant Jane Doe Number 6, a female Corrections Officer, who had instructed her to 'stick it out.'" Id. at ¶ 19.  Gillespie knew for some time prior to December 29, 2009, that something was wrong with her health, and she repeatedly attempted to communicate this to Jane Doe Number 6 and other corrections officers.  Id. at ¶ 20.  Additionally, Gillespie feared that she and/or her baby would die as a result of the defendants' failure to treat her symptoms, and she communicated this fear to others.  Id.  Specifically, she complained of an inability to breathe and a discharge from her lungs.  Id. at ¶ 21.

On December 22, 2009, the ACJ performed another standard medical assessment which again showed Gillespie was in good health.  Id. at ¶ 18. On December 29, 2009, she was admitted to the ACJ infirmary, presenting with symptoms of nausea, vomiting, aches, fever, upset stomach, and sleeplessness, which symptoms had been present for several days.  Id. at ¶¶

4

22, 23.  The medical staff treated her for influenza with IV fluids, Tylenol and Benadryl.  Id. at ¶¶ 25, 26.  Gillespie remained nauseous and her fever continued to fluctuate.  Id. at ¶ 26.

At 5:30 a.m. on January 1, 2010, a medical staff employee took note of Gillespie's inability to breathe and also wrote that she appeared to rest comfortably.  Id. at ¶ 29.   Later that day Gillespie was transported via ambulance to University of Pittsburgh Medical Center Mercy Hospital ("Mercy Hospital") and admitted to the Intensive Care Unit.  Id. at ¶¶ 30, 31.  The Mercy Hospital medical staff took cultures and determined that Gillespie had no virus or immune system failure that might have contributed to such a rapid decline in her health; instead, she suffered from bacterial pneumonia.  Id. at ¶32.  The condition required the medical staff to put her in an oxygen mask and then to intubate her because she could no longer breathe on her own.  Id. at ¶ 33.  She also required a catheter, and developed skin edema.  Id. at ¶¶ 35-36.

The fetal heart tones of Gillespie's unborn baby remained normal until January 12, 2010, when they escalated dramatically.  Id. at ¶ 37.  On January 13, 2010, Gillespie's condition worsened.  Id. at ¶ 38.  Her mother and brother were called to her bedside, and they chose to withdraw care.  Id.  She passed away at 12:34 a.m., along with her unborn child, dated at eighteen weeks gestation.  Id. at 39.

Plaintiff claims that the care received by Gillespie was not objectively reasonable and resulted in a violation of her Eighth Amendment rights.  Id. at ¶¶ 44-45.  Defendants Jane Does numbers 1 through 10, motivated by bad faith and malice, willfully and intentionally ignored her pleas for medical attention, which caused her prolonged conscious suffering and death.  Id. at ¶¶ 46, 49.  The ACJ and/or ACHS assertedly had similar problems with inmate medical care in the past, and it/they failed to take appropriate corrective action.  Their lack of appropriate policies

for the delivery of medical care to inmates reflected deliberate indifference to the serious medical needs of detainees, resulting in cruel and unusual punishment. Id. at ¶¶ 40, 44.

The moving defendants seek dismissal on the ground that plaintiff insufficiently identifies and/or alleges a constitutional violation caused by a county policy or custom. Further, the complaint purportedly fails to state a claim under the Eighth Amendment because Gillespie received medical care while at the ACJ.

Plaintiff contends that defendants ACHS and Allegheny County, and their senior policy makers, Rustin and Phillips, through express policy or the inactions of the policy makers, condoned a policy and/or practice of not providing adequate medical care to its detainees. Id. at ¶ 50. These policies and practices were developed as a result of and driven by financial concerns. Id. at ¶ 51.

**Eighth Amendment Claim**

In general, § 1983 does not itself create substantive rights, but instead provides a vehicle for vindicating a violation of a federal right.[1] Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). A cause of action under § 1983 has two elements: a plaintiff must prove (1) a violation of a right, privilege or immunity secured by the constitution and laws of the United States (2) that was committed by a person acting under color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Kelly v. Borough of Sayreville, 107 F.3d 1073, 1077 (3d Cir. 1997); Berg v. Cty. of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000) ("The Plaintiff must demonstrate that a person acting under color of law deprived him of a federal right." ) (citing

---

[1] Section 1983 creates liability against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

6

Groman, 47 F.3d at 633).  It is not contested that the defendants were acting under color of state law.

In any § 1983 claim, "the first step is to identify the exact contours of the underlying right said to have been violated." County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998) (citations omitted).  Plaintiff avers that defendants violated Gillespie's rights under the Eighth Amendment by ignoring her serious medical needs and refusing to provide her with appropriate and necessary medical treatment.  Compl. at ¶ 45.

Plaintiff bears the burden to allege a predicate basis from which findings on the objective components of the Eighth Amendment can be made.  Newland v. Achute, 932 F. Supp. 529, 532 (S.D. N.Y., 1996); Pasha v. Barry, No. Civ. A. 96-466, 1996 WL 365408, *1 (D.D.C. June 21, 1996).   The claim has two areas of focus: (1) deliberate indifference by prison officials to (2) a serious medical need.  Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).  Mere allegations of mistreatment or a disagreement over the proper course of treatment will not suffice.  Id.

In Estelle v. Gamble, the Court held that there is an obligation for the government to "provide medical care for those whom it is punishing by incarceration." Estelle, 429 U.S. 97, 103-04 (1976) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976) (joint opinion).  Estelle requires a showing of "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" in order to establish an Eighth Amendment violation.  Estelle, 429 U.S. at 106.  Accordingly, averring facts that raise an inference of being deliberately indifferent to a prisoner's serious illness or injury states a cause of action under 42 U.S.C. § 1983.  Estelle, 429 U.S. at 105.

"A medical need is 'serious,' in satisfaction of the second prong of the <u>Estelle</u> test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" <u>Monmouth County Correctional Institutional Inmates</u>, 834 F.2d at 347 (quoting <u>Pace v. Fauver</u>, 479 F. Supp. 456, 458 (D. N.J. 1979), <u>aff'd</u>, 649 F.2d 860 (3d Cir. 1981)). Reference to the effect of the denial of a particular treatment may be used to determine the seriousness of an inmate's medical need. <u>Estelle</u>, at 103. Also, if the "unnecessary and wanton infliction of pain" results from the denial or delay of adequate medical care, "the medical need is of the serious nature contemplated by the Eighth Amendment." <u>Id.</u>

In <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994), the Court explained that the term "deliberate indifference" lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." 511 U.S. at 836. It instructed that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; that is, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at 837 (citing <u>Pace v. Fauver</u>, 479 F. Supp. 456, 458 (D.N.J.1979), <u>aff'd</u>, 649 F.2d 860 (3d Cir.1981); <u>accord</u> <u>Laaman v. Helgemoe</u>, 437 F. Supp. 269, 311 (D.N.H.1977)).

The denial of a reasonable request for medical treatment that results in "undue suffering or the threat of tangible residual injury" can support a finding of deliberate indifference. <u>Monmouth County Correctional Institutional Inmates</u>, 834 F.2d at 346 (citing <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 (6th Cir.1976)). Similarly, knowledge of the need for medical care accompanied by the intentional refusal to provide that care will support such a finding. <u>Id.</u> (citing <u>Ancata v. Prison Health Servs.</u>, 769 F.2d 700, 704 (11th Cir.1985) and <u>Robinson v.

Moreland, 655 F.2d 887, 889-90 (8th Cir.1981) (jury could properly conclude that provision of ice-pack for inmate's fractured hand constituted deliberate indifference where prison guard knew medical care was needed)). And in the absence of denial, "if necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (quoting Ancata, 769 F.2d at 704 and Archer v. Dutcher, 733 F.2d 14 (2d Cir. 1984) (allegation that emergency medical care to pregnant inmate was delayed in order to make her suffer stated a claim of deliberate indifference under Estelle). In addition, deliberate indifference can be demonstrated "[w]hen … prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." Id. (quoting Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)).

Conversely, mere negligent misdiagnosis or treatment is not actionable because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1990). It follows that prison medical staff decisions involving the exercise of professional judgment do not violate the Eighth Amendment merely because they constitute medical malpractice. Id. at 107; see also Farmer, 511 U.S. at 835 (reiterating Estelle's distinction between deliberate indifference to serious medical needs and "mere negligence"); Durmer, 991 F.2d at 67 (acknowledging that a deliberate indifference claim requires that a prisoner demonstrate "more than negligence"). Likewise, "mere disagreement as to the proper medical treatment" is insufficient in establishing a constitutional violation. Monmouth, 834 F.2d at 346 (citing Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir.1977); Massey v. Hutto, 545 F.2d 45, 46 (8th Cir. 1976) (per curiam)).

Our Court of Appeals has identified several other scenarios that satisfy Estelle, such as "[w]here prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate to undue suffering or the threat of tangible residual injury," Monmouth, 834 F.2d at 346 (internal quotation omitted), or "where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care.'" Thomas v. Dragovich, 142 Fed. Appx. 33, 36-37, (3d. Cir. 2005) (quoting Monmouth, 834 F.2d at 346). Similarly, if "deliberate indifference caused an easier and less efficacious treatment" to be provided, a defendant will have violated the plaintiff's Eighth Amendment rights by failing to provide adequate medical care. West v. Keve, 571 F.2d 158, 162 (3d Cir. 1978) (citing and quoting Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974)); see also Estelle 429 U.S. at 104.

The moving defendants' implicit contention that pointing to a policy of implementing cost savings fails to satisfy the threshold needed to plead an adequate claim is unavailing. Of course, as the Third Circuit held recently in Winslow v. Prison Health Services, 406 Fed. Appx. 671, 2011 WL 167280 (3d Cir. 2011), the naked assertion that a defendant considered or operated based on an effort to contain costs does not set forth an adequate factual basis to support a claim predicated on deliberate indifference. Id. at 674. When pleading that necessary medical treatment was delayed for non-medical reasons, a plaintiff may not offer conclusory allegations such as a "policy was in place to cut costs" without providing some indication of (1) what the relevant policies were, (2) what basis the plaintiff has for thinking that "policies to save money" affected the relevant medical treatment, or (3) what specific treatment was denied as a result of these policies. Winslow, 406 Fed. Appx. at 674. In other words, "prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." Winslow, 406 Fed. Appx. at 674-75; see also Reynolds v.

10

Wagner, 128 F.3d 166, 175 (3d Cir.1997) ("[T]he deliberate indifference standard of Estelle does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."); Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir.2006) ("The cost of treatment alternatives is a factor in determining what constitutes adequate, minimum-level medical care, but medical personnel cannot simply resort to an easier course of treatment that they know is ineffective." (citations omitted)); Caines v. Hendricks, No. 05–1701, 2007 WL 496876, at *8 (D.N.J. Feb. 9, 2007) ("[I]t is not a constitutional violation for prison authorities to consider the cost implications of various procedures, which inevitably may result in various tests or procedures being deferred unless absolutely necessary.").

      The moving defendants have failed to account for the number of reasonable inferences that properly can be drawn in plaintiff's favor given the factual averments and concomitant context and setting.  Gillespie's condition, evidenced by her subsequent death, was serious and the facts alleged and the reasonable inferences drawn therefrom are enough to nudge the Eighth Amendment claim across the line between a possible and plausible claim for relief.  In other words, at this juncture the complaint sets forth a plausible showing of entitlement to relief and there exists a "reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim."  Twombly, 550 U.S. at 563 n. 8.

      Gillespie presented with what ultimately developed into a "classic case of pneumonia."  She began to complain of symptoms involving her breathing and lungs to jail personnel but was told to "stick it out."  She came to understand that something was seriously wrong with her health and tried to communicate this to jail personnel.  She did not receive treatment that abated the malady, and she started to communicate her fears of impending death to jail officials, her

mother and others. Her condition progressed to a point where she had difficulty breathing and had a discharge from her lungs. After an ongoing worsening of her condition she was taken to the infirmary with the additional symptoms of nausea, vomiting, aches, fever, upset stomach, and sleeplessness, which symptoms had been present for several days. Without taking cultures or other testing, she was treated for influenza, notwithstanding that there was no known outbreak of the flu within the institution at that time. Her condition did not improve from the prescribed treatment. She continued to complain of difficulty breathing and a discharge from her lungs. Even with the ongoing presence of these symptoms it was merely noted that she was able to rest comfortably. She was taken to a medical facility and testing for diagnosis of her condition was conducted only after she had deteriorated to the point of having to be admitted to the Intensive Care Unit. At that juncture her condition already had progressed to the point where it was fatal.

That Gillespie's medical condition progressed to a point where it was serious and she had corresponding serious medical needs cannot be questioned. She communicated these needs to jail officials to no avail. The treatment, actions and inactions of the defendants were nonexistent or not objectively reasonable. She did not improve on her own or respond positively to the treatment made available by defendants. Actual testing to confirm a proper diagnosis and course of treatment only was provided after her condition developed to the point where she had to be admitted to Intensive Care. These are more than sufficient facts and reasonable inferences to suggest the existence of and ability to prove deliberate indifference.

Defendants assertedly drew the impression and proceeded to treat Gillespie for influenza without the benefit of any medical testing and despite the lack of any evidence of an outbreak of influenza in the ACJ at the time. Compl. at ¶¶ 46, 47. The actions they took reflected deliberate indifference to a fatal condition that easily could have been controlled and cured with proper

testing, diagnosis and treatment. These basic measures were not undertaken as a result of adhering to a policy of withholding or minimizing the availability of medical care in order to control and contain costs. Id. at ¶¶ 25, 50. Up until the point where she had to be admitted to the Intensive Care Unit, the pain and suffering which Gillespie was caused to endure was done so consciously, with bad faith and malice, and out of a concern regarding the expenses that would be involved in providing proper care to Gillespie and other detainees. Id. at ¶¶ 47, 48, 51. These alleged and inferred circumstances are sufficient to posit that the asserted cost-cutting/saving policy or practice both existed and was a moving force in causing Gillespie's death.

The moving defendants largely, if not exclusively, rely on cases decided at summary judgment. The applicable standards in those cases are not pertinent here. More persuasive is Gioffre v. County of Bucks, 2009 WL 3617742 at *3-4 (E.D. Pa. 2009), a case decided at the motion to dismiss stage. There, the district court explained that a complaint that "alleges a problematic practice or policy, known to and ratified by Defendants, of denying medical care for cost-saving reasons" can, although "perhaps only barely," elevate the complaint above a general assertion of entitlement to relief. As noted above, although much remains to be seen and proper assessments can only be made after discovery of the pertinent information within the exclusive control of defendants has been completed, when construed in plaintiff's favor the allegations and reasonable inferences drawn therefrom set forth a plausible policy or practice claim against the moving defendants.

**Rustin's qualified immunity**

Defendant Rustin is named only in his individual capacity. Plaintiff avers that he is directly responsible for the constitutional violation through his implementation of an express

policy or his inactions of permitting the practice of not providing adequate medical care to detainees.  Compl. at ¶ 50.   Rustin asserts a lack of personal involvement and invokes qualified immunity as grounds for dismissal.

A "defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."   Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)); but see Perano v. Arbaugh, 2011 WL 1103885, *7 (E.D. Pa. March 25, 2011) ("In light of the United States Supreme Court's decision in Iqbal,  . . . which rejected the theory that a supervisor could be liable based on knowledge of, and acquiescence in, his subordinate's acts, courts have questioned whether the "knowledge and acquiescence" standard set out in Rode remains good law.") (citing Bayer v. Monroe County Children & Youth Services, 577 F.3d 186, 191 n. 5 (3d Cir.2009); Ramos–Vazquez v. Primecare Medical, Inc., 2010 U.S. Dist. LEXIS 105867, at *37–39, 2010 WL 3855546 (E.D. Pa. Sept. 30, 2010) (Rufe, J.)).

By "show[ing] that a policymaker is responsible either for the policy or, through acquiescence, for the custom" a plaintiff may establish Monell liability.  A v. Nutter, 737 F. Supp. 2d 341, 361-62 (E.D. Pa. 2010) (quoting Andrews, 895 F.2d at 1480); see also Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) ("It is for the jury to determine whether such officials' decisions have caused the deprivation of rights at issue (1) by policies which affirmatively command that it occur ... or (2) by acquiescence in a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity.").  Because there are allegations of actual knowledge through express policy formation and/or

through inaction in the face of established practices and prior incidents of constitutionally deficient care to detainees, the alleged factual matter, when taken as true, raises a plausible basis for establishing liability against Rustin.  See e.g. Compl. at ¶ 50 (Alleging that Rustin is liable for promulgating and/or approving a "policy and/or practice of not providing adequate medical care to [ACJ] detainees," and that he knew of or acquiesced to the policy of denying requisite medical care to inmates…).

Rustin's invocation of immunity suffers from similar shortcomings.  Although immunity is an affirmative defense, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face."  ALA, Inc. v. CCAIR, *Inc.*, 29 F.3d 855, 859 (3d Cir.1994); see also 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 358–59 (1990) (citing cases).  Accordingly, absolute or qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint."  Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (quoting Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir.1996) (citation omitted)); accord Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir.1998) (recognizing entitlement to official immunity on face of complaint); Santamorena v. Georgia Military College, 147 F.3d 1337, 1342 (11th Cir.1998) (recognizing entitlement to qualified immunity on face of complaint).

Qualified immunity shields "government officials performing discretionary functions...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Rogers v. Powell, 120 F.3d 446, 454 (3d Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "A defendant has the burden to establish that he is entitled to qualified immunity." Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court established a two-part test to determine whether a defendant is entitled to qualified immunity. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated, "the qualified immunity inquiry is at an end; the officer is entitled to immunity." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002). If, however, the facts read in the light most favorable to the plaintiff show a violation of a constitutional right, the analysis proceeds to the second step: "whether the right was clearly established... in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. A right is clearly established in the particular context if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. However, if it was not clear "to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." Kopec, 361 F.3d at 776.

Here, as noted above, the complaint sufficiently pleads a violation of a constitutional right. It further alleges a sufficient policy or practice claim against the moving defendants and Rustin's personal involvement in conjunction with that claim. Defendant Rustin has failed to put forth anything beyond the pleadings in plaintiff's complaint. Thus, he has failed to carry his burden of showing entitlement to qualified immunity.

The complaint is not based upon allegations of medical malpractice or negligence involving a prison employee; it is premised on the failure to treat an inmate's serious medical condition as a result of a custom, practice or policy of denying essential testing and diagnosis due to measures designed to produce cost-savings. In this regard it is well settled that "… non-medical prison officials are not automatically shielded from liability simply because the inmate

was receiving some form of treatment from medical personnel." <u>Gioffre</u>, 2009 WL 3617742 at * 6 (citing <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004)).

For the reasons set forth above, the moving defendants' motion to dismiss will be denied. An appropriate order will follow.

<u>Date: December 16, 2011</u>

                                    <u>s/David Stewart Cercone</u>
                                    David Stewart Cercone
                                    United States District Judge

cc:    Robert N. Peirce, III, Esquire
        D. Aaron Rihn, Esquire
        Elmer R. Keach, III, Esquire
        Stanley A. Winikoff, Esquire
        Craig E. Maravich, Esquire

        (*Via CM/ECF Electronic Filing*)